IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DONALD BENNETT NICHOLS                                                               PLAINTIFF

      V.                                    Civil No. 3:15-cv-03007-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

      Plaintiff, Donald Bennett Nichols, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background

      Plaintiff filed his application for DIB on September 20, 2012, alleging a disability onset date of January 15, 2011, due to a bad lower back, diabetes, high blood pressure, and depression. (T. 129-130, 172) His application was denied initially on November 13, 2012 (T. 78-80), and denied at reconsideration on February 13, 2013 (T. 85-86). Plaintiff requested an administrative hearing (T. 86-87), and the hearing was held on September 26, 2013, before the Hon. Harold D. Davis, Administrative Law Judge ("ALJ"). (T. 23-56) Plaintiff was present and represented by an attorney. (T. 23, 25)

      Plaintiff was 43 years old at the time of hearing, and he had a high school education plus

some college. (T. 28) He had past relevant work ("PRW") experience as a roofing supervisor, sales representative of building equipment and supplies, medical voucher clerk, and gas meter installer. (T. 33-34, 53, 174, 184) He states that he last worked on May 15, 2010.[1] He reportedly stopped working because of his condition(s) and other reasons, stating that he "[w]as let go at my job because I couldn't keep up with the job." (T. 172) He testified that he received unemployment benefits for "a while" a couple of years ago. (T. 30)

On November 14, 2013, the ALJ issued an unfavorable decision finding that Plaintiff suffered from the following severe impairments: hypertension; insulin dependent diabetes mellitus; peripheral neuropathy; and herniated nucleus pulposus, status post L5-S1 discectomy. (T. 14) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 14) After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work. (T. 14-17)

The ALJ then determined Plaintiff is capable of performing his PRW as a medical voucher clerk, and that Plaintiff has not been under a disability, as defined by the Act, from January 15, 2011 through the date of his decision. (T. 17) The Appeals Council denied Plaintiff's request for review on December 6, 2014. (T. 1-4) Plaintiff filed this action on February 2, 2015. (Doc. 1) This case is before the undersigned by consent of the parties. (Doc. 5) Both parties have filed appeal briefs (Docs. 9, 11), and the case is now ready for decision.

---

[1] Earnings records show, however, that Plaintiff earned $3,645.00 in the fourth quarter of 2011 and $1,429.00 in the first quarter of 2012. (T. 141)

## II. Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*. Thus, the Court's review is limited and deferential to the Commissioner. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises two issues on appeal: (1) whether there is substantial evidence in the record as a whole to support the ALJ's decision that Plaintiff is not disabled; and, (2) whether the ALJ erred by discrediting the opinion of Plaintiff's treating physician. (Doc. 9, pp. 1, 8-16)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

#### A. Sufficiency of the Evidence

Plaintiff first argues there is insufficient evidence to support the ALJ's finding that Plaintiff is not disabled. He points to diagnostic studies of his lumbar spine, multiple back surgeries, an August 2013 visit to his physician for back pain, and his physician's September 24, 2013 medical source statement. (Doc. 9, pp. 10-11) The Commissioner responds that the ALJ's restriction of

Plaintiff to sedentary work is a significant restriction, showing the ALJ credited Plaintiff and his treating physician's opinions to a significant degree, and that Plaintiff failed to establish any additional limitations not already accounted for in the ALJ's RFC assessment. (Doc. 11, pp. 4-5)

Plaintiff has clearly been through difficult times resulting from recurrent disc herniations at L5-S1, but the evidence of record shows that those problems were in the remote past. The CT scan referred to by Plaintiff (Doc. 9, p. 10) was performed on February 27, 2002, approximately 18 months prior to the Plaintiff's first back surgery. (T. 306-307) The x-ray mentioned by Plaintiff (Doc. 9, p. 10) was taken during the first surgery ("lateral lumbar spine *in OR*") (emphasis added). (T. 238) The lumbar epidural steroid injections cited by Plaintiff (Doc. 9, p. 11) all occurred prior to the first surgery. (T. 287-288, 289-290, 292-293) Plaintiff's first back surgery, a discectomy on the left side at L5-S1 with nerve root decompression, was performed on August 15, 2003. (T. 239-240) Plaintiff tolerated the procedure well, and he was stable for discharge the following morning. (T. 233) He developed a recurrent herniation and had repeat surgery in December 2003. He did well after that procedure. (T. 271) He began to have problems once more in the fall of 2004 with another recurrent herniation, and a third disc excision surgery was done on December 30, 2004. (T. 271, 280-281) Plaintiff continued to have persistent back pain after the third procedure, and he requested surgical intervention to prevent future recurrences. (T. 271) Plaintiff's fourth back surgery, a total disc replacement procedure, was performed on February 9, 2005. (T. 282-283) He tolerated that surgery well and had no major postoperative problems. (T. 266-267) His surgeon noted that, "[h]e actually had good relief of his preoperative symptoms." (T. 267) Thereafter, the record shows that Plaintiff did not seek any further treatment for his back for another eight years until August, 2013. (T. 313-314) *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (time between doctor visits did not

indicate claimant was experiencing severe pain). During that period, Plaintiff worked at the substantial gainful activity level, working as a medical voucher clerk at Arkansas Children's Hospital until June 2005, then at the North Metro Medical Center from June 2005 through May 2006, as a project manager for a roofing company from May 2006 to November 2008, and as a production manager for another roofing company from August 2009 until May 2010. (T. 174, 184)

Plaintiff states that he stopped working on May 15, 2010 because he was let go from his job due to not being able to keep up with the job. (T. 172) There is no evidence in the record, however, that he was receiving any medical treatment in 2010 or that any physician had imposed limitations on his activities at that time. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (upholding finding that claimant's reported pain was not credible where unsupported by medication history and evidence suggested claimant stopped working because of lay-offs, rather than disability); *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) (finding that claimant did not lose job because of his disability, he lost it because his position was eliminated).

Plaintiff alleges a disability onset date of January 15, 2011, but again, there are no treatment records around that time. Plaintiff even acknowledged that he was taking some online college classes in business, and that he had done three estimating jobs for a roofer in late 2011 to early 2012 that resulted in approximately $5,000.00 in earnings. (T. 32, 39, 141) The ALJ found that such work, while not constituting disqualifying substantial gainful activity, was indicative of an ability to perform sedentary work. (T. 15) The Court agrees. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) (holding that working after the onset of an impairment is some evidence of an ability to work); *Naber v. Shalala*, 22 F.3d 186, 188-189 (8th Cir. 1994) (working generally demonstrates an ability to perform a substantial gainful activity).

The ALJ commented that Plaintiff "has not generally received the type of medical treatment that one would expect for a totally disabled individual," finding that Plaintiff's medical treatment was "routine and conservative in nature and generally successful in controlling his symptoms." (T. 15) The evidence as a whole supports that conclusion. During the relevant period of review, Plaintiff's treatment consisted only of routine check-ups with his primary care physician, medications to control his hypertension, diabetes, and peripheral neuropathy, and conservative treatment for back pain on only one occasion. Other than routine lab work, no MRIs, CT scans, or other diagnostic tests were ordered, nor was Plaintiff referred to any specialist for evaluation and treatment.

On December 5, 2011, Plaintiff presented to Harrison Family Practice to establish care. His chief concern was blood pressure problems and needing $4 medications at Wal-Mart. He complained of tingling and numbness in his feet, but denied any myalgias or fatigue. Plaintiff made no complaint of low back pain. (T. 250) A neurological exam showed no focal signs.[2] He was diagnosed with benign hypertension and hyperglycemia. (T. 250) Lisinopril was prescribed for treatment of the benign hypertension; Metformin was prescribed for hyperglycemia; and, Plaintiff was counseled on diet and the elimination of all sweets, simple carbs, and to reduce portion size. (T. 250-251) At his follow-up visit on December 28, 2011, Plaintiff denied myalgias, fatigue, tingling, or numbness, and he indicated he was following his diet and started exercising daily. Plaintiff did not complain of any low back pain. (T. 243) He was diagnosed with benign hypertension and diabetes mellitus type II,

---

[2] A focal neurological deficit is a problem with nerve, spinal cord, or brain function. It affects a specific location, such as the left side of the face, right arm, or even a small area such as the tongue. Speech, vision, and hearing problems are also considered focal neurological deficits. *See* https://www.nlm.nih.gov/medlineplus/ency/article/003191.htm (last accessed on February 24, 2016).

and he was continued on his same medications, with an increase in Metformin. (T. 243)

Plaintiff only sought treatment twice in 2012. He complained of a cough and erectile dysfunction during a visit on February 20, 2012, but no mention was made of low back pain. (T. 241) Medication for his benign hypertension was adjusted. (T. 242) When he returned to the clinic seven months later on September 25, 2012, he advised that he had been out of blood pressure medications for two weeks, and it was noted that he was non-compliant. (T. 255) He complained of having some vision trouble and that his toes and feet felt "like they are frost bit." Once again, there was no complaint of any low back pain. (T. 255) Neurological exam showed decreased sensation in his toes and the bottom of his feet; a diabetic eye exam was normal. (T. 255, 257) He was diagnosed with benign hypertension, diabetes mellitus type II, and diabetic neuropathy. (T. 255) He was given educational materials regarding his benign hypertension and diabetes, and his medications were adjusted to treat his diabetes. (T. 256-257) An eye examination on October 26, 2012 was within normal limits and showed Plaintiff had unaided visual acuity of 20/30 in both eyes. (T. 245)

Routine and conservative care continued through 2013. Plaintiff had check-ups on January 14 and August 6, 2013, during which he made no complaints of low back pain, and medications were prescribed, adjusted, and monitored for treatment of his benign hypertension and diabetes. (T. 253-254, 311-312) Plaintiff had only one visit to a doctor complaining of back pain during the relevant period. Plaintiff told Dr. Brownfield on August 20, 2013 that he had an acute onset of back pain and was unable to stand straight getting out of bed, and also that he had some "pins and needles" in his left thigh. (T. 313) Plaintiff's appearance was "uncomfortable due to pain." Neurological exam showed no focal signs. Plaintiff's spine leaned to the left, and some pain and spasm was noted in the paraspinal area. (T. 313) He was diagnosed with low back pain, and he was treated conservatively

with medications, instructed to use heat and NSAIDS, and to walk. (T. 313) No restrictions on Plaintiff's activities were imposed, and no referral was made for any further diagnostic testing or evaluation and care by a specialist. (T. 313)

The Court agrees with the Commissioner that this single record, over two and one-half years after the alleged onset of disability, is insufficient to demonstrate that Plaintiff had a debilitating back impairment. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). Although it is clear that plaintiff suffers from some degree of pain and discomfort, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

In addition to the routine and conservative nature of Plaintiff's medical treatment, the ALJ also considered the Plaintiff's activities of daily living ("ADL's"). (T. 16-17) Plaintiff reported that while he had some trouble putting his socks and shoes on, that he sits on the bed to put his pants on, and that he has trouble washing his feet, he otherwise has no problems with his personal care. He cares for his teenage daughter; prepares his own meals; does laundry and housework with the help of his daughter; goes out two to three times daily, walks, and drives a car; shops in stores once a week; handles money with no problems; watches sports and interactive TV daily; spends time with others, including watching sports, shopping with his daughter, and attending his daughter's school activities two to three times weekly; has no problems getting along with family, friends, or

neighbors; can follow written and spoken instructions; gets along with authority figures very well; and, handles stress fairly well, but not so well with changes in his routine. (T. 195-200) As already noted, Plaintiff has also taken online college classes in business, and he engaged in some self-employment in late 2011 and early 2012. (T. 32, 39, 141)

There are, of course, cases in which a claimant's ability to engage in certain personal activities "does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (finding that "staying around the house" and "watching T.V." do not constitute substantial evidence that the claimant could work); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (a claimant's ability to engage in "personal activities such as cooking, cleaning, and hobbies" does not per se constitute substantial evidence that the claimant could work). That is not the case here, however, given both the extent of Plaintiff's daily activities and the independent medical evidence. *See, e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends"); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (the ALJ discounted the claimant's allegations and found he could perform sedentary work based in part upon his activities, which included the ability to do some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries using an electric cart).

Finally, the ALJ relied in part upon the opinions of the State agency medical consultants. (T. 17) It was proper for him to do so, as "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). On November 7, 2012, David L. Hicks, M.D. opined that Plaintiff could perform sedentary work with the ability to occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. 62-64) That RFC assessment was affirmed by Bill F. Payne, M.D. on February 13, 2013. (T. 73-75) These medical opinions further support the ALJ's RFC assessment and his overall decision that Plaintiff was not disabled.

Considering the record as a whole, including the minimal, routine and conservative nature of Plaintiff's medical treatment, his daily activities, and expert opinion, substantial evidence supports the ALJ's determination that Plaintiff is capable of performing work at the sedentary level and is not disabled.

### B.  Treating Physician Rule

Plaintiff also contends that the ALJ erred by wrongfully discrediting the opinion of his treating physician in accordance with SSR 96-2. (Doc. 9, pp. 1, 13-16)

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005); *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009). We will uphold an ALJ's decision to discount or even disregard the opinion of a

treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Reed*, at 920-21 (internal quotations omitted); *see also Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

Plaintiff's treating physician, Dr. Shannon Brownfield, had been Plaintiff's treating physician since December, 2011. During that time, Plaintiff had been seen in clinic a total of seven times.[3] (T. 241-242, 243-244, 250-251, 253-254, 255-257, 311-312, 313-314) As discussed in the preceding section, on only one of those occasions, August 20, 2013, did Plaintiff present with any complaints of back pain. (T. 313-314) On September 24, 2013, Dr. Brownfield completed a form apparently procured by, and submitted to, Plaintiff's counsel. (T. 316-319) In it, Dr. Brownfield noted diagnoses of diabetes type II, neuropathy, hypertension, and low back pain. (T. 316) Symptoms were said to be chronic low back pain and chronic foot pain. (T. 316) Prolonged standing reportedly aggravates the chronic foot pain and the low back pain is at times worse with use. (T. 316) Clinical findings were said to be decreased sensation to feet and pain and limited range of motion to the low back. (T. 316) Medications and activity modification had reportedly stabilized Plaintiff's neuropathy. (T. 316) Dr. Brownfield believed Plaintiff could sit for 30 minutes at one time; could sit about four hours total in an eight-hour working day; could stand ten minutes at one time and less than two hours total in an eight-hour working day; and, that every 30 minutes he would need to walk around for five minutes. (T. 317) Plaintiff would also require, according to Dr. Brownfield, a job that permitted shifting positions at will from sitting, standing, or walking. (T. 317) He would also need to take

---

[3] Two other visits, on November 7, 2012 and June 28, 2013, were for labs only. (T. 252, 264-265)

unscheduled breaks every two hours or so to rest for 30 minutes. (T. 317) Plaintiff would not require his legs to be elevated with prolonged sitting, nor would he require a cane or other assistive device while engaged in occasional standing/walking. (T. 318) He could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift 20 pounds. (T. 318) He could occasionally climb stairs, rarely twist, stoop (bend), crouch/squat, and never climb ladders. (T. 318) No significant limitations with reaching, handling, or fingering were imposed. (T. 318) Dr. Brownfield also felt Plaintiff would be "off task" due to his symptoms 25% of the time or more, but that he was capable of low stress work. (T. 319) Finally, Dr. Brownfield opined that Plaintiff would likely be absent from work as a result of his impairments more than four days per month. (T. 319) While Dr. Brownfield stated that Plaintiff's impairments "as demonstrated by signs, clinical findings and laboratory or test results were *reasonably consistent* with the symptoms and functional limitations" set forth in his evaluation, he did not refer to, or append, any such signs, clinical findings, test results, or examination notes. (T. 319)

After considering the totality of the evidence, the ALJ concluded that Dr. Brownfield's opinions were not supported by the overall medical evidence of record or his own routine examination findings. (T. 16) Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. *See* 20 C.F.R § 404.1527(d)(2); SSR 96-2p; *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). Here, the ALJ has given good reasons for discounting the opinions of Dr. Brownfield. After evaluating the record as a whole, the Court agrees with the ALJ's determination that other substantial evidence was inconsistent with Dr. Brownfield's opinions.

Despite alleging a disability onset date of January 15, 2011, and his hearing testimony that he cannot work due to severe low back pain, there is a dearth of treatment records during the relevant period. On only one occasion did Plaintiff complain of back pain, and he was treated for it conservatively with medications, told to use heat, NSAIDs, and to walk. Dr. Brownfield's progress notes show that he never imposed any physical limitations or work restrictions on Plaintiff. *See Fischer v. Barnhart*, 56 F. App'x. 746, 748 (8th Cir. 2003) ("in discounting [the treating physician's] opinion, the ALJ properly noted that ... [the treating physician] had never recommended any work restrictions for [the claimant]"). Dr. Brownfield's treatment records just do not reflect the degree of limitation he indicated in his September 24, 2013 medical source statement. Thus, the ALJ did not err in discrediting Dr. Brownfield's opinions, and he gave sufficient reasons for doing so. The record supports the ALJ's conclusion that Dr. Brownfield's opinions were inconsistent with, and unsupported by, other evidence in the record, including Dr. Brownfield's own treatment notes. *See Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) (ALJ may discount a treating physician's opinion if it is not supported by the doctor's own treatment records); *Reed*, 399 F.3d at 921 (ALJ permitted to discount medical source's opinions in MSS where limitations listed on the form stand alone and were never mentioned in numerous treatment records nor supported by objective testing or reasoning); *Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (inconsistency between treating physician's treatment records and his functional assessment provides good reason for ALJ to discount physician's opinion). In the end, the ALJ did give some weight to Dr. Brownfield's opinions by restricting Plaintiff to sedentary work.

On final point deserves some mention. The fact that the ALJ's written decision does not identify the specific weight given to Dr. Brownfield's opinions does not necessitate remand in this

case. The record makes clear that the ALJ considered the opinions of Dr. Brownfield's medical source statement of September 24, 2013, and gave those opinions some, but less than controlling, weight. At most, there is a deficiency in the ALJ's opinion-writing technique, and not a substantive error in the ALJ's analysis or conclusions. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case).

Having reviewed the record and the ALJ's reasoning, the Court finds the ALJ provided sufficient rationale for giving less than substantial or controlling weight to Dr. Brownfield's opinions set forth in the September 24, 2013 medical source statement.

### IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 25th day of February, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE